IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SANDRA D. S., )
  )
    Plaintiff, )
  )
v. ) Case No. 22-cv-00099-SH
  )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
  )
    Defendant. )

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sandra D. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id*. § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation for Title XVI.)

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits with a protective filing date of July 6, 2020.[3] (R. 10, 250-58.) In her applications, Plaintiff alleged that she has been unable to work since June 18, 2020, due to conditions including depression, a learning disability, and anxiety. (R. 250, 252, 283.) Plaintiff was 42 years old at the time of the current ALJ's decision. (R. 19, 250, 252.) She has a high school education and past relevant work as a merchandise deliverer, janitor, and convenience store cashier. (R. 61, 284.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 173-81, 184-94.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on September 29, 2021. (R. 40-66, 196-97.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 10-19.) The Appeals Council denied review on January 6, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4] Plaintiff now appeals.

---

[3] Plaintiff had previous applications for benefits denied on June 17, 2020. (R. 70-81.)
[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2024. (R. 12.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 18, 2020. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) borderline intellectual functioning disorder; (2) depression; and (3) anxiety. (R. 13.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 13-14.)

After considering certain evidence, the ALJ concluded Plaintiff had the RFC to perform "a full range of work at all exertional levels" with the following non-exertional limitations:

> [The claimant is] able to understand, remember and carry out simple routine and repetitive tasks with routine supervision, able to attend and concentrate for 2 hour periods with routine work breaks, able to interact with supervisors and co-workers on a superficial work basis, no interaction with the general public, can respond appropriately to changes in a routine work setting which are gradually introduced and infrequent.

(R. 14.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 14-17.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 17.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as hand packager, laundry worker, and industrial cleaner. (R. 17-18.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 18-19.)

### IV. Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to properly consider Listing 12.05 (ECF No. 14 at 4, 6-7); (2) failing in his evaluation of the medical evidence (*id.* at 5-6); (3) declining to include RFC limitations that accounted for the moderate mental

4

limitations found at step three (*id.* at 9-10); and (4) relying on representative jobs at step five that are incompatible with her RFC (*id.* at 7-9). Having considered the ALJ's decision and the administrative record, the undersigned finds no error. Plaintiff's arguments are reorganized for clarity.

V.   **Analysis**

    A.   **Step-Three – Listing 12.05.**

Without much development, Plaintiff argues she has an impairment that "equals Listing 12.05," which she claims the ALJ improperly failed to consider. (*Id.* at 4, 6.) At step three of the sequential process, an ALJ determines whether an impairment "meets or equals" a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). A listed impairment is one that is automatically disabling because it is "severe enough to prevent an individual from doing any gainful activity, regardless of . . . her age, education, or work experience." 20 C.F.R. § 404.1525(a).[5] An impairment "meets" the listing when the claimant "meets all the criteria of any listed impairment . . . ." Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *2 (March 27, 2017). If this occurs, the claimant will be found disabled. *Id.* When an impairment does not meet all these criteria, however, it may still medically "equal" an impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* For example, if a claimant exhibits all the findings necessary for a listing, but the findings are "not as severe as specified in the particular listing, then [the ALJ] will find that . . . her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the related criteria." *Id.*

---

[5] *See generally* 20 C.F.R. § 416.925 for Title XVI.

While Plaintiff claims the ALJ ignored Listing 12.05, she does not explain which portion of the listing she believes was overlooked. Based on her brief, it appears she is relying on Listing 12.05B.[6] To meet this listing, a claimant must show not only that she has a sufficiently low IQ score, but also that she has an extreme limitation in one—or a marked limitation in two—of the following areas of mental functioning: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; or (d) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05B. While the ALJ did not consider Listing 12.05B, he <u>did</u> consider these areas of mental functioning as they related to other listings—finding Plaintiff had only "moderate" limitations. (R. 13-14.) Plaintiff does not contest these findings, which are supported by substantial evidence. As such, Plaintiff could not show that any of her impairments meet Listing 12.05B. Any failure to consider Listing 12.05B, would, therefore, be harmless. *See, e.g., Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (noting that an ALJ's other findings "may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment"); *Williams v. Berryhill*, 682 F. App'x 665, 666 (10th Cir. 2017) (unpublished)[7] ("failure to mention a particular Listing is not always fatal" when findings made elsewhere in the record conclusively negate the listing).

---

[6] Listing 12.05A requires significant deficits in adaptive functioning manifested by dependence on others for person needs, such as toileting, eating, dressing, or bathing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05A. Plaintiff does not argue she has such a dependence. Moreover, Plaintiff's hearing testimony and *Function Reports* demonstrate that she was not dependent upon others in these ways. (*See generally* R. 47-59, 304-11, 331-38.)

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

That leaves Plaintiff with an argument that her impairment medically equals the listing. "It is Plaintiff's burden to point to specific medical evidence definitively establishing that her impairments met or medically equaled [this] listing." *Brandee C. v. Kijakazi*, No. 1:20-CV-00129-CMR, 2022 WL 875942, at *2 (D. Utah Mar. 23, 2022) (citing *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007)). As support for her arguments, Plaintiff points to her scores on the Wechsler Adult Intelligence Scale, 4th Edition ("WAIS-IV"), which showed a full-scale IQ of 69, as well as the following composite scores: 68 in verbal comprehension (2nd percentile); 67 in perceptual reasoning (1st percentile); 77 in working memory (6th percentile); and 86 in processing speed (18th percentile). (ECF No. 14 at 4 (citing R. 413).) Plaintiff also points to Dr. Kim Beair's statement that she might "benefit from a sheltered workshop experience with like peers and trained supervisors to help her gain practical work skills in a safe environment." (*Id.* at 5 (citing R. 435).) This evidence, however, is insufficient to show her impairment medically equals a listing.

"To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record <u>must</u> contain one of the following:" (1) a prior administrative medical finding from a medical consultant or psychological consultant supporting the medical equivalence finding; (2) medical expert evidence obtained at the hearing level that supports the medical equivalence finding; or (3) a report from the Appeals Council's medical support staff supporting the medical equivalence finding. SSR 17-2, at *3 (emphasis added). As the Commissioner notes, the record does not contain such evidentiary support. (ECF No. 18 at 6.) In fact, the prior administrative medical consultants in this case determined that Plaintiff did <u>not</u> meet or equal Listing 12.05. (R. 93, 111, 138, 158.) Nor did the record contain evidence from a medical expert

7

or Appeals Council medical support staff that indicated Plaintiff equaled the listing. Thus, Plaintiff cannot prove that she met or medically equaled Listing 12.05.

The Court finds no reversible error at step three.

### B.   Consideration of Medical Evidence.

In the midst of her step-three arguments, Plaintiff also contends the ALJ erred in his consideration of the medical evidence by failing to explicitly mention each of the composite scores on the WAIS-IV test administered by Dr. Vaught. (ECF No. 14 at 4-6.) Plaintiff argues that not mentioning these composite scores constituted improper picking and choosing from the record. Further, she points to online descriptions of the verbal comprehension and perceptual reasoning indexes as evidence that she would have "severe limitations," be "very limited in utilizing verbal information or instructions," and "have severe problems with nonverbal reasoning." (*Id.* at 4-5.) Plaintiff then argues the ALJ erred in finding another doctor's opinion unpersuasive when that opinion was consistent with Plaintiff's interpretation of the composite scores. (*Id.* at 5 (referencing Dr. Beair).)

#### 1.   Dr. Larry Vaught

During a prior disability application in 2019, Plaintiff had a consultative psychological examination performed by Dr. Vaught. (R. 412.) As a part of this evaluation, Dr. Vaught conducted a WAIS-IV test, which resulted in the composite scores and IQ discussed above. (R. 413.) The ALJ considered Dr. Vaught's examination in determining Plaintiff's RFC, noting her IQ and two of her composite scores (processing speed and working memory).[8] (R. 15.) The ALJ also noted that "[Plaintiff] was able to care for her six-year-old child, drive, bathe, and cook." (*Id.*) The ALJ did not specifically

---

[8] The ALJ also briefly mentioned Dr. Vaught's IQ testing during his step-three evaluation. (R. 13 (noting Plaintiff "has on one occasion tested with an IQ of 69").)

8

mention Plaintiff's verbal comprehension and perceptual reasoning scores. Nevertheless, the Court finds no error.

The "record must demonstrate that the ALJ considered all of the evidence," but he is "not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ is to discuss evidence supporting his decision, as well as uncontroverted evidence he chooses not to rely on and the significantly probative evidence he rejects. *Id.* at 1010. Moreover, when the evidence predates the onset of disability, while an ALJ still considers it, he is not required to weigh or discuss it. *See Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018) (unpublished) ("[Claimant] cites no authority, and we have found none, requiring an ALJ . . . to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different medical issues and evidence, and that resulted in a denial of benefits."); *Martin v. Berryhill*, 2018 WL 6314594, at *3-4 (W.D. Okla. Nov. 8, 2018) (finding no error in ALJ's failure to discuss consultative examination opinion rendered in connection with prior disability application). *See also generally Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (explaining that doctor's medical observations relating to previously adjudicated periods "should be *considered* by the ALJ" (emphasis added)). Here, the ALJ went further than was required of him and discussed the results of the WAIS-IV testing conducted by Dr. Vaught. (R. 15.) There is nothing to indicate he failed to consider it. Therefore, Plaintiff's contention that the ALJ engaged in improper picking and choosing is unpersuasive.

### 2. Dr. Kim Beair

Plaintiff next faults the ALJ for finding Dr. Beair's opinion unpersuasive without considering how it would be consistent with the WAIS-IV test results. (ECF No. 14 at 5.)

9

To the extent Dr. Beair offered qualifying medical opinions under 20 C.F.R. § 404.1513(a)(2),[9] the ALJ's consideration of those opinions was adequate.

When considering a medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion. 20 C.F.R. § 404.1520c(a).[10] Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering five factors.[11] *Id.* § 404.1520c(a) & (c). Of those five factors, the ALJ must always explain how he considered only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is not required to explain how the other factors were weighed absent two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2)-(3).

Here, the ALJ's consideration of Dr. Beair's findings adhered to the regulation. He explicitly addressed both the supportability of her opinion (R. 16 (noting that the opinion was unsupported "by cited findings such as the claimant successfully completing testing

---

[9] *See generally* 20 C.F.R. § 416.913 for Title XVI.

[10] *See generally* 20 C.F.R. § 416.920c for Title XVI.

[11] These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

10

where she was able to follow four step commands, demonstrated intact memory, and adequate concentration and attention")), and the consistency of the opinion (*id.* (finding it "wholly inconsistent" with Plaintiff's daily life activities, such as managing her funds and raising a minor child, as well as multiple findings by her primary provider that her insight and judgment were fair)). As it is clear the ALJ considered the WAIS-IV scores—and provided substantial evidence to support his persuasiveness finding—there was no error here.

## C. Incorporating "Paragraph B" Findings in the RFC.

Toward the end of her brief, Plaintiff also argues the RFC failed to account for the moderate limitations in mental functioning found at step three. (ECF No. 14 at 9-10.) This Court has previously rejected arguments that attempt to equate step-three findings with the separate task of determining work-related functional limitations in the RFC. *See, e.g., Christopher S. S. v. Kijakazi*, No. 21-CV-00367-SH, 2023 WL 2186432, at *6-*7 (N.D. Okla. Feb. 23, 2023). The Court will not rehash the law here. It suffices to note that the ALJ considered the evidence of Plaintiff's mental limitations (R. 15-17), incorporated those findings into the RFC in the form of work-related limitations (R. 14), and utilized the RFC as a basis for the hypothetical to the VE (R. 62-64). A finding of moderate limitation at step three does not inherently equate to a work-related functional limitation in the RFC. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

Nevertheless, despite Plaintiff's claims, the ALJ specifically imposed limitations that accounted for Plaintiff's social restrictions and difficulty in concentration, persistence, and pace. Namely, the ALJ limited Plaintiff to work requiring only the ability "to understand, remember and carry out simple routine and repetitive tasks with routine

supervision";[12] attend and concentrate on tasks "for 2 hour periods with routine work breaks"; respond appropriately to infrequent changes in routine; engage in only "superficial" interaction with coworkers and supervisors; and have no interaction with the general public. (R. 14.) Plaintiff has failed to show that any other functional limitations were required.

D.     **Compatibility of Step-Five Jobs with RFC.**

Lastly, Plaintiff argues the ALJ erred at step five by accepting the VE's testimony as to representative jobs, which she claims "are inconsistent with the [RFC] parameters . . . ." (ECF No. 14 at 7.) In particular, Plaintiff maintains that the representative jobs—some of which require a GED Reasoning Level of 2—are at odds with Plaintiff's RFC limitation to understand, remember, and carry out simple routine and repetitive tasks with routine supervision. (*Id.* at 7-9.) The Court is unpersuaded.

At step five, the Commissioner has the burden "to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all

---

[12] The Tenth Circuit has held that "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'" *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (unpublished). By similarly including a limitation to "simple routine and repetitive tasks with routine supervision" in the RFC (R. 14), the ALJ accounted for the moderate limitation he identified at step three.

the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[13]

In this case, the ALJ presented the VE with a hypothetical that matched the RFC contained in his decision. (R. 62-64.) In response to this hypothetical, the VE indicated that Plaintiff could work as a hand packager, a laundry worker, and an industrial cleaner. (*Id.*) The ALJ, therefore, concluded that Plaintiff could perform these three jobs and that the jobs existed in significant numbers in the national economy. (R. 17-18.) The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (R. 18.)

While an ALJ can rely on the VE's testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of his opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (discussing process when there exists "an apparent unresolved conflict" between VE's testimony and the DOT).

---

[13] In *Qualls*, the court found, where "the ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*

Relevant to Plaintiff's arguments,[14] the jobs of hand packager and industrial cleaner, require a reasoning level of 2, which contemplates the claimant "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT § 920.587-018, 1991 WL 687916 (4th ed. 1991) (hand packager); DOT § 381.687-018, 1991 WL 673258 (4th ed. 1991) (industrial cleaner). Plaintiff claims these requirements are inconsistent with her RFC for "simple routine and repetitive tasks." (ECF No. 14 at 7-9.)

However, case law indicates there is no conflict between jobs requiring a reasoning level of 2 and an RFC limitation to simple and routine work. The Tenth Circuit noted in *Hackett*: "level-two reasoning appears more consistent" with an RFC requiring "simple and routine work tasks." 395 F.3d at 1176. While the *Hackett* statement was arguably dicta, the Tenth Circuit later cited it for the proposition that "a limitation for simple and routine work tasks was . . . consistent with the demands of level two reasoning . . . ." *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (cleaned up). Based on this finding, the court in *Stokes* rejected the plaintiff's argument "that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one." *Id.* (affirming where "[a]ll of the jobs considered by the ALJ had a reasoning level rating of two").

---

[14] Contrary to Plaintiff's assertion, the laundry worker job only requires a reasoning level of 1, which contemplates the claimant "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations . . . ." DOT § 361.687-018, 1991 WL 672992 (4th ed. 1991).

The undersigned finds the holding in *Stokes* to be on point, persuasive, and applicable. Plaintiff cites no distinguishing case law—instead, offering her own interpretation of how the GED reasoning level language should "logically" be read—and her reliance on the Program Operations Manual System ("POMS") is misplaced.[15] *See Henningson v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, No. 98-9531, 1999 WL 728061, at *4 (10th Cir. Sept. 16, 1999) (unpublished) ("[T]he POMS is not legally binding"). There is no conflict between the RFC in this case and level-two reasoning. As such, the ALJ did not err in relying on the VE's testimony to determine that Plaintiff could perform the hand packager and industrial cleaner jobs.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 21st day of August, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[15] Plaintiff argues that "Social Security's definition of unskilled work at POMS § DI 25020.010(A)(3) show a person limited to simple, repetitive, routine work, with one (1) to two (2) step instructions cannot do a job requiring a GED reasoning level of 2." (ECF No. 14 at 9.) Yet Plaintiff was not limited to following one-to-two step instructions. (R. 14.) Nor are Plaintiff's arguments regarding when the word "detailed" occurs in the POMS persuasive considering the Tenth Circuit case law discussed above.